Eric R. Henkel
CHRISTIAN SAMSON, PLLC
310 W. Spruce Street
Missoula, Montana 59802
Tel:  (406) 721-7772
Fax:  (406) 721-7776
Email: eric@csjlaw.com
   *Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

| | |
|---|---|
| SHANDA SARCHETTE, an individual,<br><br>Plaintiff,<br>vs.<br><br>ALEX M. AZAR II, Secretary of the United States Department of Health and Human Services; PAUL CARLSON, an individual; and JOHN DOES 1-10,<br><br>Defendants. | Cause No. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiff Shanda Sarchette, by and through her counsel of record, and for her Complaint and Demand for Jury Trial against the above-named Defendants, alleges and states as follows:

**PARTIES**

1. Plaintiff Shanda Sarchette ("Plaintiff") is an individual and a female. Plaintiff is, and at all times relevant to this Complaint was, a resident of Ravalli County, Montana.

2. Defendant Alex M. Azar II ("Mr. Azar") is the Secretary of the United States Department of Health and Human Services (the "Department"). Mr. Azar is named as the Defendant in this action in his capacity as the Secretary of the Department. The Department is an executive department of the federal government of the United States of America.

3. Defendant Paul Carlson ("Mr. Carlson") is an individual. Upon information and belief, Mr. Carlson is, and at all times relevant to this Complaint was, a resident of Ravalli County, Montana.

4. Defendants John Does 1 through 10 are individuals or entities believed to be responsible in some manner for the occurrences and injuries herein alleged. The claims against John Does 1 through 10 are not yet ripe and/or Plaintiff is ignorant of the true names, capacities and identities of John Does 1 through 10. Plaintiff will amend this Complaint to allege the true names, capacities and identities of John Does 1 through 10 once their true names, capacities and identities are ascertained and/or once the claims against those defendants are ripe.

## JURISDICTION AND VENUE

5. Plaintiff realleges and incorporates each of the other allegations of this Complaint as if fully set forth herein.

6. This is an action for employment discrimination and harassment based on sex under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and any and all other applicable laws. This Court has original jurisdiction of this action under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

7. This is also an action for claims arising under state law. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over all state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

8. At all times relevant to this Complaint, the Department was Plaintiff's "employer" or "joint employer" within the meaning of Title VII and within the meaning of any and all other applicable laws.

9. At all times relevant to this Complaint, Plaintiff was an "employee" of the Department within the meaning of Title VII and within the meaning of any and all other applicable laws.

10. Most or all of the unlawful conduct and employment practices alleged herein took place or occurred at the Department's premises located in Ravalli County, Montana.

11. Jurisdiction is proper in this Court.

12.   Venue is proper in this Court.

## ADMINISTRATIVE PROCEDURES

13.   Plaintiff realleges and incorporates each of the other allegations of this Complaint as if fully set forth herein.

14.   Plaintiff has complied with and exhausted, and/or has been excused from complying with, all pre-filing requirements before bringing this action.

15.   In accordance with 29 C.F.R. § 1614.105 and other applicable law, within 45 days of the date of the matter alleged to be discriminatory, Plaintiff initiated contact with an official logically connected with the Equal Employment Opportunity ("EEO") process and exhibited an intent to file an EEO complaint and begin the EEO process. In addition, the Department failed to notify Plaintiff of the pre-complaint processing requirements and procedures set forth in 29 C.F.R. § 1614.105. In addition, the Department made representations and/or engaged in conduct which led Plaintiff to reasonably believe that she had satisfied the requirements of 29 C.F.R. § 1614.105 or was excused from satisfying the requirements of 29 C.F.R. § 1614.105. Under the circumstances, based on the Department's representations, acts, and omissions, it was reasonable for Plaintiff to believe that she had satisfied the requirements of 29 C.F.R. § 1614.105 or was excused from satisfying the requirements of 29 C.F.R. § 1614.105.

16. In accordance with 29 C.F.R. § 1614.105(d) and 29 C.F.R. § 1614.106, Plaintiff filed a formal administrative complaint within 15 days of receipt of the notice required by 29 C.F.R. § 1614.105(d), (e) or (f).

17. On or around May 8, 2019, Plaintiff received a "Final Agency Decision" along with a notice indicating that she had the right to file a civil action in United States District Court within 90 days of her receipt of the "Final Agency Decision."

18. Based upon the date of receipt of the "Final Agency Decision," this Complaint is timely, and Plaintiff has met and exhausted all administrative prerequisites for the filing of this civil action.

## FACTS COMMON TO ALL COUNTS

19. Plaintiff realleges and incorporates each of the other allegations of this Complaint as if fully set forth herein.

20. In or around November 2008, Plaintiff began working as a safety specialist at Rocky Mountain Laboratories ("RML") in Ravalli County, Montana. RML is a biomedical research facility owned, operated and controlled by the Department. Beginning in or around November 2008 and continuing through the present, Plaintiff worked as a safety specialist within the Department's Technical Assistance Branch, Division of Occupational Health and Safety, National Institute of Allergy and Infectious Diseases, National Institutes of Health.

21. At all times relevant to this Complaint, Plaintiff was a full-time employee of the Department at the RML facility.

22. At all times relevant to this Complaint, the Department was Plaintiff's employer or joint employer.

23. At all times relevant to this Complaint, Plaintiff reported to, and was supervised and monitored by, representatives of the Department. At all times relevant to this Complaint, Paul Carlson ("Mr. Carlson"), who was an employee and representative of the Department, affirmatively represented to Plaintiff that he was her supervisor and boss and that he had the authority to terminate her employment. At all times relevant to this Complaint, Plaintiff's job duties and performance as a safety specialist were such that she was always subject to the supervision and oversight of one or more representatives of the Department, including Mr. Carlson.

24. At all times relevant to this Complaint, the Department had the power, either indirectly or directly, to discipline Plaintiff and to terminate Plaintiff's employment.

25. At all times relevant to this Complaint, the Department furnished Plaintiff with a place to work. At all times relevant to this Complaint, the Department furnished Plaintiff with the instrumentalities, equipment, resources and training needed to execute and perform her job duties.

26. At all times relevant to this Complaint, Plaintiff's job duties and work performance were an integral part of the business of the Department.

27. At all times relevant to this Complaint, the Department had the right and/or power to assign additional projects and/or work to Plaintiff.

28. At all times relevant to this Complaint, the Department had primary and/or significant discretion over when and how long Plaintiff would work.

29. At all times relevant to this Complaint, the Department exercised primary and/or significant control over the terms and conditions of Plaintiff's employment and over the means and manner of Plaintiff's work performance. At all times relevant to this Complaint, the Department controlled and directed the work of Plaintiff, not only as to the results achieved, but also as to the details by which those results were achieved.

30. At all times relevant to this Complaint, representatives of the Department, including Mr. Carlson, intended to, and did, exercise primary and/or significant control over the terms and conditions of Plaintiff's employment and over the means and manner of Plaintiff's work performance.

31. At all times relevant to this Complaint, Plaintiff reasonably believed that representatives of the Department, including Mr. Carlson, had primary and/or significant control over the terms and conditions of her employment and over the means and manner of her work performance

32. Beginning in or around 2009 and continuing through the end of approximately 2018, Mr. Carlson continuously and repeatedly subjected Plaintiff to discriminatory, harassing and threatening conduct based upon her sex. Specifically, Mr. Carlson continuously and repeatedly made sexually inappropriate, lewd and threatening comments to Plaintiff and other female employees of the Department. Most or all of Mr. Carlson's sexually inappropriate, lewd and threatening comments occurred onsite at the RML facility and/or during the course and scope of Mr. Carlson's and Plaintiff's employment with the Department. Mr. Carlson's sexually inappropriate, lewd and threatening comments included, without limitation, the following:

(a) Mr. Carlson would rate the physical appearance of female employees, including Plaintiff, on a scale of 1-10;

(b) Mr. Carlson made comments to female employees, including Plaintiff, about the size and appearance of Plaintiff's breasts;

(c) Mr. Carlson commented to female employees, including Plaintiff, how if he were in Plaintiff's position, he would use his body and looks to "get laid";

(d) Mr. Carlson told Plaintiff that if he had known that she was into older guys, he would have stopped at nothing to attempt to date her;

(e) Mr. Carlson made sexually inappropriate and lewd comments about the physical appearance of his own teenage daughter and the minor daughters of other Department employees;

(f) Mr. Carlson asked female employees, including Plaintiff, if they knew what the age of consent was in Montana for statutory rape;

(g) Mr. Carlson made comments to Plaintiff and her mother about wanting to have a sexual 3-way relationship with them;

(h) Mr. Carlson told Plaintiff that when she first started her employment, she was "completely hot" but now she was "chubby" and thus unattractive;

(i) Mr. Carlson told female employees, including Plaintiff, that because he was a federal employee, he would have to "murder or rape someone" before he would be fired;

(j) Mr. Carlson told female employees, including Plaintiff, that he wanted to have a sexual affair with another employee of the Department who had just as much to lose as he did;

(k) Mr. Carlson told Plaintiff that he could and would fire her if she ever reported his sexually inappropriate and lewd behavior to anyone within the Department;

    (l)    Mr. Carlson asked Plaintiff, "What's worse? A thousand cocks or the same cock a thousand times?"

33. Plaintiff was not the only female employee of the Department who experienced and was subjected to Mr. Carlson's sexually inappropriate, lewd and threatening behavior. Plaintiff witnessed, or was informed of, numerous other instances where Mr. Carlson engaged in sexually inappropriate, lewd and/or threatening behavior toward female employees of the Department.

34. Beginning in or around 2009 and continuing through the end of approximately 2018, the Department knew or should have known of Mr. Carlson's discriminatory and harassing conduct toward Plaintiff and other female employees of the Department. Specifically, Debbie Wilson and John Barr, who were both in positions of authority within the Department, were made aware, and knew, of Mr. Carlson's discriminatory and harassing conduct toward Plaintiff and other female employees of the Department.

35. At all times relevant to this Complaint, Mr. Carlson was acting in his capacity as a representative of the Department. At all times relevant to this Complaint, the Department had control over Plaintiff's work environment and place of work.

36. At all times relevant to this Complaint, the Department failed to take prompt measures within its control to eliminate, correct, and/or remedy Mr.

Carlson's discriminatory and harassing conduct.  Despite knowing of the discriminatory and harassing conduct, the Department allowed Mr. Carlson to continue having access to female employees, including Plaintiff.

37. At all times relevant to this Complaint, Plaintiff was subjected to the unlawful discriminatory and harassing conduct described herein because she is a female.

38. When Plaintiff and other female employees complained about Mr. Carlson's discriminatory and harassing conduct to persons in positions of authority within the Department, the Department did nothing to eliminate, correct, and/or remedy Mr. Carlson's discriminatory and harassing conduct.  In fact, the Department threatened to terminate Plaintiff if she continued reporting or complaining of Mr. Carlson's discriminatory and harassing conduct.  Consequently, Plaintiff feared that she would be terminated or subjected to other adverse employment action if she reported or complained of Mr. Carlson's discriminatory and harassing conduct.

39. As a consequence of Mr. Carlson's discriminatory and harassing conduct and as a consequence of the Department's failure to eliminate, correct, and/or remedy Mr. Carlson's discriminatory and harassing conduct, Plaintiff was subjected to an extremely hostile work environment for approximately 10 years.  Eventually, in or around late 2018, Mr. Carlson's employment with the

Department came to an end. Upon information and belief, Mr. Carlson was terminated or forced to resign as a direct result of written complaints that Plaintiff and other female employees made about Mr. Carlson's discriminatory and harassing conduct.

40. As a consequence of Mr. Carlson's discriminatory and harassing conduct and as a consequence of the Department's failure to eliminate, correct, and/or remedy Mr. Carlson's discriminatory and harassing conduct, Plaintiff experienced and suffered severe emotional distress, including, but not limited to, shame, humiliation, intimidation, and fear.

41. As a consequence of Mr. Carlson's and the Department's conduct, Plaintiff suffered damages, both general and special, in an amount to be proven at the time of trial.

## COUNT I: DISCRIMINATION
**(against the Department)**

42. Plaintiff realleges and incorporates each of the other allegations of this Complaint as if fully set forth herein.

43. The Department engaged in policies and practices which willfully, intentionally, and unlawfully discriminated against Plaintiff on the basis of her sex. Those practices and policies included, but were not limited to, allowing Paul Carlson to work closely with Plaintiff and other female employees of the Department and failing to warn or protect Plaintiff from Mr. Carlson despite

knowing that Mr. Carlson was engaging in discriminatory and harassing conduct toward Plaintiff and other female employees of the Department.

44. The Department's conduct violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and any and all other applicable laws. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein. Plaintiff is suffering and will continue to suffer irreparable injury as a result of the acts and omissions of the Department.

45. As a consequence of the Department's conduct, Plaintiff suffered and continues to suffer emotional distress.

46. As a consequence of the Department's conduct, Plaintiff suffered and continues to suffer damages, both general and special, in an amount to be proven at the time of trial.

## COUNT II: HOSTILE WORK ENVIRONMENT
**(against the Department)**

47. Plaintiff realleges and incorporates each of the other allegations of this Complaint as if fully set forth herein.

48. Plaintiff was subjected to unlawful, inappropriate, lewd, indecent and offensive sexual conduct sufficient to alter the terms, conditions, and privileges of her employment.

49. The Department's acts and omissions created a hostile work environment.

50. As a consequence of the Department's conduct, Plaintiff suffered and continues to suffer emotional distress.

51. As a consequence of the Department's conduct, Plaintiff suffered and continues to suffer damages, both general and special, in an amount to be proven at the time of trial.

### COUNT III: NEGLIGENT HIRING, TRAINING, SUPERVISION, INVESTIGATION AND/OR RETENTION
**(against the Department)**

52. Plaintiff realleges and incorporates each of the other allegations of this Complaint as if fully set forth herein.

53. The Department owed Plaintiff a non-discretionary and non-delegable duty to provide a hostility-free work environment.

54. The Department owed Plaintiff a non-discretionary and non-delegable duty to train its employees with regard to issues of sexual harassment and/or maintenance of a hostility-free work environment for its employees, as well as issues relating to discrimination, reprisal and/or retaliation.

55. The Department owed Plaintiff a non-discretionary and non-delegable duty to properly and/or effectively supervise its employees to ensure a work environment that is free from sexual harassment, discrimination, reprisal and/or retaliation in compliance with and/or enforcement of its policies and/or procedures.

56. The Department owed Plaintiff a non-discretionary and non-delegable duty to promptly and/or effectively investigate claims and/or reports of sexual harassment and/or hostile work environment, as well as claims and/or reports of discrimination, reprisal and/or retaliation.

57. The Department owed Plaintiff a non-discretionary and non-delegable duty to take prompt and immediate steps and/or corrective action in response to reports and/or complaints of sexual harassment, hostile work environment, discrimination, reprisal, and/or retaliation.

58. The Department owed Plaintiff a non-discretionary and non-delegable duty to take prompt and/or effective steps or measures to discipline, up to and including termination, employees who are found to have violated the Department's policies prohibiting sexual harassment, creation of a hostile work environment, discrimination, reprisal and/or retaliation.

59. The Department breached its duties to Plaintiff by (a) failing to provide a hostility-free work environment; (b) failing to train its employees with regard to issues of sexual harassment and/or maintenance of a hostility-free work environment for its employees, as well as issues relating to discrimination, reprisal and/or retaliation; (c) failing to properly and/or effectively supervise its employees to ensure a work environment that is free from sexual harassment, discrimination, reprisal and/or retaliation in compliance with and/or enforcement of its policies

and/or procedures; (d) failing to promptly and/or effectively investigate claims and/or reports of sexual harassment and/or hostile work environment, as well as claims and/or reports of discrimination, reprisal and/or retaliation; (e) failing to take prompt and immediate steps and/or corrective action in response to reports and/or complaints of sexual harassment, hostile work environment, discrimination, reprisal, and/or retaliation; and (f) failing to take prompt and/or effective steps or measures to discipline, up to and including termination, employees who are found to have violated the Department's policies prohibiting sexual harassment, creation of a hostile work environment, discrimination, reprisal and/or retaliation.

60. As a consequence of the Department's conduct, Plaintiff suffered and continues to suffer emotional distress.

61. As a consequence of the Department's conduct, Plaintiff suffered and continues to suffer damages, both general and special, in an amount to be proven at the time of trial.

### COUNT IV: NEGLIGENCE
### (against Mr. Carlson)

62. Plaintiff realleges and incorporates each of the other allegations of this Complaint as if fully set forth herein.

63. Mr. Carlson owed Plaintiff a duty of reasonable care and a duty to avoid subjecting Plaintiff to sexually discriminatory and harassing conduct.

64. Mr. Carlson breached his duties to Plaintiff by, among other things, subjecting her to sexually discriminatory and harassing conduct.

65. As a consequence of Mr. Carlson's conduct, Plaintiff suffered and continues to suffer emotional distress.

66. As a consequence of Mr. Carlson's conduct, Plaintiff suffered and continues to suffer damages, both general and special, in an amount to be proven at the time of trial.

### COUNT V: INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
**(against Mr. Carlson)**

67. Plaintiff realleges and incorporates each of the other allegations of this Complaint as if fully set forth herein.

68. Plaintiff suffered serious and severe emotional distress as a consequence of Mr. Carlson's negligent and/or intentional conduct.

69. The serious and severe emotional distress suffered by Plaintiff was the reasonably foreseeable consequence of Mr. Carlson's negligent and/or intentional acts or omissions.

70. As a consequence of Mr. Carlson's conduct, Plaintiff suffered and continues to suffer serious and severe emotional distress, including, but not limited to, fright, grief, shame, humiliation, embarrassment, anger, and worry.

71. As a consequence of Mr. Carlson's conduct, Plaintiff suffered and continues to suffer damages, both general and special, in an amount to be proven at the time of trial.

72. In addition, Mr. Carlson's conduct amounted to "actual malice" as that term is defined under Mont. Code Ann. § 27-1-221(2) in that he (a) deliberately proceeded to act in conscious or intentional disregard of the high probability of injury to Plaintiff and/or (b) deliberately proceeded to act with indifference to the high probability of injury to Plaintiff.

73. As a consequence of Mr. Carlson's conduct, Plaintiff is entitled to an award of punitive damages in accordance with Montana law, including, but not limited to, Mont. Code Ann. §§ 27-1-220 and 27-1-221.

WHEREFORE, Plaintiff respectfully prays for the following relief:

1. For judgment against Defendants and in favor of Plaintiff on all claims alleged in this Complaint;

2. For an award of general and special damages as allowed by law, including, but not limited to, damages for pain and suffering, emotional distress, out-of-pocket expenses, and past and future lost wages and benefits;

3. For an award of punitive damages as allowed by law;

4. For an award of pre- and post-judgment interest as allowed by law;

5.  For such injunctive and affirmative relief as will prevent Defendants from engaging in discriminatory and harassing conduct against similarly situated females;

6.  For an award of any and all other appropriate relief necessary to make Plaintiff whole and compensate her for the civil rights violations and other violations of law described herein;

7.  For an award of costs as allowed by law;

8.  For an award of reasonable attorneys' fees as allowed by law; and

9.  For such other relief as the Court deems just and proper.

DATED this 31st day of July, 2019.

CHRISTIAN SAMSON, PLLC

By:  /s/ Eric R. Henkel
Eric R. Henkel
*Attorney for Plaintiff*

## JURY DEMAND

COMES NOW, Plaintiff Shanda Sarchette, by and through counsel, and hereby demands a jury trial on all issues so triable.

DATED this 31st day of July, 2019.

CHRISTIAN SAMSON, PLLC

By:  /s/ Eric R. Henkel
Eric R. Henkel
*Attorney for Plaintiff*